**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J, and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2017**

# In the Court of Appeals of Georgia

A17A0067. PATEL et al. v. STATE OF GEORGIA.           DO-003

DOYLE, Chief Judge.

The State of Georgia filed a complaint for forfeiture in rem against the owners of a Citgo gas station based on alleged illegal commercial gambling on the premises using video gaming machines. The trial court granted the relief sought, and Tejaskumar Satish Patel and Dharmasut, LLC ("the defendants"), the owners of the station, appeal. For the reasons that follow, we affirm.

"We begin by noting that the interpretation of a statute is a question of law, which we review de novo on appeal. Moreover, because the trial court's ruling on a

legal question is not due any deference, we apply the 'plain legal error' standard of review."[1]

The evidence in this case is undisputed. In 2015, the Hall County Sheriff's Department was informed that employees at the gas station were paying out cash to winners using the store's coin-operated amusement machines. On May 25, 2015, a confidential informant placed $40 in a machine and redeemed the accumulated $20 credit with a store employee in exchange for two scratch-off lottery tickets.[2] On June 1, 2015, the informant returned to the gas station, again placed $40 in a machine, and obtained a credit of $60. In exchange for the credit, a store employee gave the informant a $10 scratch-off lottery ticket and $40 in cash, and she put $10 in her own pocket.

On June 4, 2015, police executed a search warrant for the gas station and seized $12,027.50 in cash from video gaming machines, the registers, a cash bag, a safe, drawers, boxes, Patel's wallet, and an ATM machine. The State then filed a complaint for forfeiture in rem pursuant to OCGA § 16-12-32.        Following a hearing, the

---

[1] (Citations and punctuation omitted.) *State v. Howell*, 288 Ga. App. 176 (653 SE2d 330) (2007).

[2] The events were recorded on video surveillance equipment.

trial court approved the forfeiture, concluding that by paying out cash and lottery tickets as winnings for customers using the amusement machines, the appellants converted the machines to "gambling devices"; the gas station qualified as a gambling place; and the currency was "used in, intended for use in, used to facilitate, derived from, or realized through" gambling activity. This appeal followed.

The defendants contend that the trial court erred by granting the forfeiture because the video gaming machines at issue were not "gambling devices" under Georgia law. We disagree.

OCGA § 16-12-20 (a) (2) (2015) defines "a gambling device" as "[a]ny contrivance which for a consideration affords the player an opportunity to obtain money or other thing of value, the award of which is determined by chance even though accompanied by some skill, whether or not the prize is automatically paid by contrivance."[3] Because the gaming machines in this case offer players the opportunity

---

[3] OCGA § 16-12-35 (a) defines the term "some skill" as "any presence of the following factors, alone or in combination with one another: (1) A learned power of doing a thing competently; (2) A particular craft, art, ability, strategy, or tactic; (3) A developed or acquired aptitude or ability; (4) A coordinated set of actions, including, but not limited to, eye-hand coordination; (5) Dexterity, fluency, or coordination in the execution of learned physical or mental tasks or both; (6) Technical proficiency or expertise; (7) Development or implementation of strategy or tactics in order to achieve a goal; or (8) Knowledge of the means or methods of accomplishing a task. The term some skill refers to a particular craft, coordinated

3

to obtain value, and the award they receive is determined by chance even though they do involve an element of skill, they qualify as gambling devices under OCGA § 16-12-35.[4] OCGA § 16-12-35 (d) (1) (2015), however, provides an exception, stating that Georgia's gambling statutes do not apply to

> a coin operated game or device designed and manufactured only for bona fide amusement purposes which involves some skill in its operation if it rewards the player exclusively with: (A) [f]ree replays; (B) [m]erchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than $5.00 received for a single play of the game or device; (C) [p]oints, tokens, vouchers, tickets, or other evidence of winnings which may be exchanged for rewards set out in subparagraph (A) of this paragraph or subparagraph (B) of this paragraph or a combination of rewards set out in subparagraph (A) and subparagraph (B) of this paragraph; or (D) Any combination of rewards set out in two or more of subparagraph (A), (B), or (C) of this paragraph.

---

effort, art, ability, strategy, or tactic employed by the player to affect in some way the outcome of the game played on a bona fide coin operated amusement machine as defined in paragraph (2) of Code Section 50-27-70. If a player can take no action to affect the outcome of the game, the bona fide coin operated amusement machine does not meet the 'some skill' requirement of this Code section."

[4] At the hearing, the defendants introduced exhibits indicating that in March and July, respectively, the Georgia Lottery Corporation ("the GLC") and a company employed by the GLC, inspected the gaming machines in the Citgo and concluded that they were compliant with Georgia law and the GLC regulations.

Here, the machines themselves do not produce cash or lottery tickets to players as rewards to players. The trial court concluded, however, that by giving players cash and lottery tickets as rewards for winning games on the machines, the gas station employees effectively converted them into gambling devices. OCGA § 16-12-32 (b) (4) (2015) permits the State to seize via forfeiture "[a]ny property located in this state which was, directly or indirectly, used or intended for use in any manner to facilitate a violation of this article or of the laws of the United States relating to gambling and any proceeds." Thus, pretermitting whether the cash payouts from the employees converted the machines into "gambling devices" as defined by statute, these actions clearly violated the gambling laws of Georgia, which prohibit cash payouts for winning games on machines when the winnings are determined by chance even if they involve an element of skill.[5] Accordingly, the trial court did not err by finding in favor of the State and approving the forfeiture.

*Judgment affirmed. Miller, P. J., and Reese, J., concur*.

---

[5] See, e.g., *Patel v. State*, 289 Ga. 479, 485 (3) (713 SE2d 381) (2011) ("[E]ven property that is lawful to possess and operate can be used to violate the law, and thus would be subject to forfeiture under the RICO statute if it is used in racketeering activity.").